IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

MELVIS L. DUDLEY,        )
                                        )
            Plaintiff,       )
                                        )
v.                                )    Case No. CIV-08-218-KEW
                                        )
MICHAEL J. ASTRUE,       )
Commissioner of Social     )
Security Administration,   )
                                        )
           Defendant.      )

## OPINION AND ORDER

Plaintiff Melvis L. Dudley (the "Claimant") requests judicial
review of the decision of the Commissioner of the Social Security
Administration (the "Commissioner") denying Claimant's application
for disability benefits under the Social Security Act. Claimant
appeals the decision of the Administrative Law Judge ("ALJ") and
asserts that the Commissioner erred because the ALJ incorrectly
determined that Claimant was not disabled. For the reasons
discussed below, it is the finding of this Court that the
Commissioner's decision should be and is REVERSED and REMANDED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the
"inability to engage in any substantial gainful activity by reason
of any medically determinable physical or mental impairment. . ."
42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

substantial evidence; and, second, whether the correct legal standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); *see also*, <u>Casias</u>, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on February 28, 1951 and was 56 years old at the time of the ALJ's latest decision. He completed his high school education and vocational training in auto body work. Claimant has engaged in past relevant work as a semi-trailer truck driver, spot welder, crane operator, and dump truck driver.

Claimant alleges an inability to work beginning February 1, 2004 due to degenerative disk and joint disease status post lumbar fusion with peripheral nerve involvement, degenerative joint disease of the right lower extremity status post fractured right femur, transient ischemic attacks, cerebrovascular accidents, chronic pain syndrome, obesity, hypertension, anxiety, and depression.

## Procedural History

On February 3, 2004, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income benefits pursuant to Title XVI of the Social Security Act (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications for benefits were denied initially and upon reconsideration. On May 15 and August 8, 2007, Claimant appeared at hearings before ALJ Jennie L. McLean in Ardmore, Oklahoma. By decision dated August 23, 2007, the ALJ found Claimant was not disabled at any time through the date of the decision. On April 30, 2008, the Appeals Council denied Claimant's request for review. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. She found Claimant retained the residual functional capacity ("RFC") to perform a significant range of sedentary work.

## Errors Alleged for Review

Claimant asserts the ALJ committed error requiring reversal in (1) failing to engage in a proper analysis at step five; and (2) failing to properly evaluate the opinions of Claimant's treating physician.

## Step Five Analysis

Claimant first reported an injury to his lower back on July 23, 1988 after lifting an object at work. (Tr. 304). He was diagnosed with acute lumbar strain. Id. X-rays revealed degenerative changes to the lumbar spine including mild curvature, only four lumbar vertebra, mild narrowing of the L5-S1 disk space with small osteopytes, and clear narrowing and hypertrophic changes of S1-S2 intervertebral space. (Tr. 315). A lumber CT scan also showed minimal hypertrophic irregularity at the L4-S1 level with the possibility of previous trauma to the L4 lip and minimal impingement of the left nerve root although the subarachnoid space, spinal canal, and facet joints were intact. (Tr. 316).

Claimant was admitted to the hospital in December of 1988 and March of 1989. His treatment culminated in a surgical lumbar

fusion. He was hospitalized for over two weeks. Claimant was noted to be experiencing lumbar tenderness with mild spasm, limited lumbar mobility in four planes of movement, the ability to stand on his heel and toes, and the ability to ambulate with a walker after surgery. He was also diagnosed with a lumbar strain superimposed on a transitional lumbar vertebra. (Tr. 321-27, 343-45).

In August of 1990, Claimant was examined by Dr. C. B. Pettigrew. He found Claimant's lumbar mobility was limited to 60 degrees of flexion, 10 degrees of extension, and side bending of approximately 20 degrees. The neurological examination, Claimant's heel to toe walking, and straight leg raise testing were normal. X-rays revealed bony fusion material between the left L4 and sacrum and motion at all lumbar levels on flexion and extension suggesting that any fusion was not solid. Claimant also had assymetrical transitional L5 vertebra with sacralized right transverse area and narrow transitional interspace. Dr. Pettigrew concluded Claimant could return to work. (Tr. 206).

Claimant was attended by Dr. Mark Newey after he sustained a sprained wrist with torn ligaments in January of 2002. (Tr. 382). Dr. Newey had previously seen Claimant in 1992 when he diagnosed Claimant with cervical radiculitis and carpal tunnel syndrome. (Tr. 281-82), and hypertension in December of 2002 (Tr. 277-79).

On August 7, 2003, Claimant was again attended by Dr. Newey when he reported left side facial and lower left arm numbness with fatigue. Dr. Newey diagnosed Claimant as having experienced a transient ischemic attack. (Tr. 273). However, Claimant was released to work by Dr. Newey on August 21, 2003 with restrictions of no driving of heavy equipment or lifting off the ground. He was released without limitation on September 18, 2003. (Tr. 262-68, 270-71).

On February 5, 2004, Claimant experienced soreness in his neck and right shoulder. He saw Dr. Newey who diagnosed cervicobrachialis syndrome, intercostal neuritis, and thoracic sprain. (Tr. 275-76).

On February 24, 2004, Claimant was treated by Dr. Newey for depression, hypertension, back pain, and stress. Dr. Newey prescribed medication for the conditions. (Tr. 261). On March 2, 2004, Claimant presented to Dr. Newey with a diagnosis of chronic anxiety. (Tr. 260).

On April 29, 2004, Claimant underwent a consultative physical examination by Dr. Dennis Whitehouse. Claimant reported having three strokes since July of 2003 which were not treated by a physician. Claimant contends these strokes left the left side of his face numb and his left arm having some deficits. (Tr. 215).

Dr. Whitehouse noted a decreased range of motion to Claimant's cervical spine with extension to 30 degrees, flexion of his back to 60 degrees and extension to 10 degrees with side bending to 20 degrees in each direction. Claimant's fifth digit was held at a -20 degrees and he was unable to extend it. Dr. Whitehouse did not note any neurological deficits to Claimant's face. He was able to heel walk but complained of pain down into his right leg with toe walking with some weakness. He complained of some tenderness to palpation along the paraspinal musculature in the lumbar and thoracic spine. Dr. Whitehouse's conclusion was Claimant suffered from chronic pain syndrome with decreased range of motion to his low back and some slight decreased range of motion to his cervical spine. (Tr. 216).

On June 10, 2004, Claimant again saw Dr. Newey reporting dullness or drooping of the left side of his face, leg, and arm with constant drooling after a fourth transient ischemic attack. He did not seek medical attention after the attack. (Tr. 259). Claimant displayed normal mobility, tenderness in his back and weakness in his left hand and shoulder with elevated blood pressure. He was diagnosed with a cerebrovascular accident and was prescribed medication. Id.

In June through November of 2004, Claimant went to the Good

Shepherd Community Health Clinic. Doctors at the clinic diagnosed Claimant with hypertension, a history of transient ischemic attacks, anxiety, arthritis, and tobacco addiction. (Tr. 287-90, 291-92).

On November 15, 2004, Claimant underwent a second consultative physical examination by Dr. Charles N. Howard. Claimant reported he could no longer work as he had had a stroke on the left side of his body with several TIAs. (Tr. 229). Dr. Howard noted weakness on the left side, unable to heel to toe walk because of his left side problems. He concluded Claimant suffered from status post cerebrovascular accident, multiple TIAs, nicotine addiction, and overweight. (Tr. 230).

On February 3, 2005, Claimant again saw Dr. Newey with hip pain where he displayed full mobility but also positive Patrick/Fabere's test, and radiological evidence of a hip fracture. (Tr. 257-58). Throughout the remainder of 2005, Claimant was treated for depression, anxiety, hypertension, tenderness in his right hip and leg, anc back pain which affected his walking. (Tr. 295, 429-38).

On February 27, 2006, Claimant was attended by Dr. Newey, complaining of shoulder, low back, and right knee pain. (Tr. 404). Claimant was diagnosed with lumbar radiculitis, throacic strain,

degenerative joint disease of the right knee.  Id.

On November 9, 2006, Claimant saw Dr. Newey with knee ligament tenderness.  Dr. Newey diagnosed Claimant with degenerative joint disease.  (Tr. 408).

On April 16, 2007, Claimant went to Dr. Newey with hypertrophic surgery scars, bilateral lower paraspinal muscle tenderness, and sacroiliac joint tenderness.  Dr. Newey found moderately reduced extension, flexion, lateral motion, and rotation in Claimant's lumbar spine and instability in both knees.  His diagnosis was cerebrovascular accident and lumbar disk disease or degeneration with myelopathy.  (Tr. 411).

Dr. Newey also completed a Medical Assessment of Ability to Do Work Related Activities (Physical) form on Claimant.  He found Claimant could sit upright only, stand and walk one hour in an eight hour day.  He found Claimant could not work an 8 hour day at any level.  Dr. Newey determined Claimant could lift under 10 pounds and could not use his hands for simple grasping, pushing and pulling of arm controls, or fine manipulation.  He also found Claimant could use only his left foot for foot controls.  (Tr. 409).

On May 17, 2007, Claimant once again visited Dr. Newey observably emotionally labile and solemn due to depression.  (Tr.

10

445-46). He returned the following day with elevated blood pressure and was prescribed medication for the condition. (Tr. 443-44).

In her decision, the ALJ determined Claimant suffered from the severe impairments in the right knee, lumbar spine, and high blood pressure. (Tr. 21). However, she found Claimant retained the residual functional capacity to perform the sedentary tasks of motor vehicle transportation dispatcher and semiconductor assembler. (Tr. 27-28). The ALJ found Claimant retained the RFC to perform such work with a sit/stand option, no climbing ladders, ropes or scaffolds, no use of the right lower extremity leg controls, no balancing, kneeling, crouching, or crawling, and occasional climbing or stooping. (Tr. 24).

The ALJ concluded Claimant had acquired transferrable skills from his past relevant work as a bench carpenter, among others. (Tr. 27). However, Claimant only performed that work for one month and did not perform it long enough for it to be considered substantial gainful activity. 20 C.F.R. § 404.1565(a), 404.1574, 416.965(a), 416.974(c). Therefore, that job should not have been among those from which transferrable skills were attained. The ALJ, therefore, was in error in her step five analysis of transferrable skills.

11

Additionally, the ALJ did not properly elicit testimony from the vocational expert to determine why the skills attained from other past relevant work were transferrable to the identified sedentary jobs without vocational adjustment such as tools, work processes, work settings, or the industry. 20 C.F.R. §§ 404.1568(d)(4), 416.968(d)(4). On remand, the ALJ shall explain through pertinent questioning of the vocational expert as to the particular skills that are transferrable to the identified jobs.

## Treating Physician's Opinion

Claimant also contends the ALJ failed to properly consider the opinions of Dr. Newey. The ALJ rejected Dr. Newey's opinion reflected on the Medical Assessment form, finding "the medical evidence does not support such conclusions." (Tr. 27). Conspicuously missing from the ALJ's conclusion is the specific medical evidence which ostensibly contradicts Dr. Newey's longstanding treatment record and his conclusions on Claimant's limitation. As noted herein, Dr. Newey's treatment records support some level of limitations upon Claimant's ability to function. Moreover, the ALJ apparently gave no weight to Dr. Newey's opinions.

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is

entitled to "controlling weight." <u>Watkins v. Barnhart</u>, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." <u>Id</u>. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." <u>Id</u>.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." <u>Id</u>. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. <u>Id</u>. at 1300-01 (quotation omitted).

After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); <u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." <u>Id</u>. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." <u>Watkins</u>, 350 F.3d at 1301 (quotations omitted).

The ALJ failed to go through this required analysis to discount Dr. Newey's opinion. On remand, the ALJ shall re-evaluate Dr. Newey's opinions and make the necessary findings for assessing the weight of those opinions.

### Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Opinion and Order.

DATED this 29th day of September, 2009.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE